1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8
9    Kraig Clark,                         )    No. CV-08-1844-PHX-GMS (LOA)
                                          )
10             Petitioner,                )    **REPORT AND RECOMMENDATION**
                                          )
11   vs.                                  )
                                          )
12   Charles L. Ryan, et al.,             )
                                          )
13             Respondents.               )
                                          )
14   _____  )

15          This matter arises on Petitioner's Petition for Writ of Habeas Corpus by a Person

16   in State Custody pursuant to 28 U.S.C. § 2254. (docket # 1) Respondents[1] filed an Answer

17   (docket # 10) to which Petitioner has not replied and the deadline has expired.  Based on

18   review of the record, the Petition should be denied for the reasons set forth below.

19   **I.  Factual and Procedural Background**

20          **A.  Charges, Plea and Sentencing**

21          Between January and July of 2004, Petitioner sexually molested several young boys

22   in Surprise, Arizona. (Respondents' Exh. A at 2) Petitioner was convicted at trial in Arizona

23   Superior Court Case Number CR 2004-022524 of the following offenses: (1) three counts of

24   sexual abuse, class 5 felonies; (2) six counts of child molestation as dangerous crimes against

25   children, class 2 felonies; (3) two counts of furnishing obscene or harmful items to minors, class

26   _____

27          [1] Petitioner named Dora B. Schriro as a Respondent.  Pursuant to Fed.R.Civ.P. 25(d),
     Charles L. Ryan, current director of the Arizona Department of Corrections, is substituted for
28   Dora B. Schriro.

4 felonies; and (4) two counts of sexual conduct with a minor as dangerous crimes against children, class 2 felonies. (Respondents' Exh. B at 12-13) Pending sentencing, Petitioner agreed to "free talk"with the State and police investigators, during which he confessed to the murder of a 13-year-old boy and other unrelated offenses against minors. (Respondents' Exh. A at 3) As a result of Petitioner's cooperation in the homicide case, the State filed a direct complaint in the Superior Court of Arizona, CR 2005-0117989, charging Petitioner with one count of first-degree murder. (Respondents' Exh. C)

On July 15, 2005, the trial court[2] conducted a hearing regarding the first-degree murder charge. (Respondents' Exh. B) The court explained that, if found guilty, the sentencing range was from life in prison with the possibility of parole after 35 years to a sentence of death. Petitioner waived his right to a preliminary hearing and his related rights. (Respondents' Exh. B at 5-6) The court then explained that a plea agreement had been offered pursuant to which Petitioner would plead guilty to first degree murder in exchange for a sentence of natural life to run concurrently with his sentences for his convictions in Case Number CR 2004-022524. (Respondents' Exh. C at 7)

Next, the court engaged Petitioner in the following colloquy:

The Court: [H]ave you read the plea agreement?

[Petitioner]: Yes, your Honor.

The Court: Has [counsel] explained it to you?

[Petitioner]: Yes, your Honor.

The Court: Does it contain everything you and the State have agreed to about how this case will be resolved?

[Petitioner]: Yes, your Honor.

The Court: Do you understand the plea agreement?

[Petitioner]: Yes, I do.

The Court: Does your signature appear actually on a number of the pages at the end there?

---

[2] The Honorable Michael O. Wilkinson presided.

| | |
|---|---|
| 1 | [Petitioner]: Yes, your honor. |
| 2 | The Court: By pleading guilty you give up some very important rights that you have. They are in the plea agreement, but I am going over them |
| 3 | one more time. |
| 4 | You have the right to keep your plea the way it is right now, not guilty, and have a trial by jury. The jury would decide whether you were guilty or not |
| 5 | guilty. |
| 6 | At the trial, you'd be represented by your attorney and you would be presumed innocent. The State would have to prove that you were guilty |
| 7 | beyond a reasonable doubt. |
| 8 | You'd have the right to confront, face to face, the witnesses against you and have your attorney cross examine each of those witnesses. At the |
| 9 | trial you could testify from the witness stand if you wanted, or you could have other people brought in by court order to testify for you. You'd also |
| 10 | have the right to remain silent, not say a thing and the State couldn't say anything to the jury about why you decided to remain silent. Do you |
| 11 | understand you have all those rights? |
| 12 | [Petitioner]: Yes, your Honor. |
| 13 | The Court: Do you want to give those up, instead of a trial, enter this plea agreement? |
| 14 | [Petitioner]: Yes, your Honor. |
| 15 | * * * |
| 16 | The Court: Did anybody promise you anything or guarantee you anything that isn't in the plea agreement? |
| 17 | [Petitioner]: No, sir. |
| 18 | The Court: Anybody force you or threaten you to get you to enter this plea? |
| 19 | [Petitioner]: No Sir. |
| 20 | |
| 21 | The Court: Now, I want you to turn to the last page of the plea agreement. It's labeled "factual basis." Have you read that? |
| 22 | [Petitioner]: Yes, your Honor, I have. |
| 23 | * * * |
| 24 | The Court: Is every word that is in that statement true as to what you did on that day? |
| 25 | [Petitioner]: Yes, sir. |
| 26 | The Court: Do you have any questions you want to ask me or [counsel] about anything in this plea agreement? |
| 27 | [Petitioner]: No, Sir. |
| 28 | |

> The Court: Court finds that [Petitioner] knowingly, intelligently, and voluntarily enters a plea of guilty to the charges as set forth in the plea agreement. There is a factual basis for the plea, it's accepted and entered of record.

(Respondents' Exh. B at 8-11)

Thereafter, defense counsel advised the court that Petitioner waived time for sentencing and the preparation of a presentence report in CR-05-11789. Counsel requested that the court sentence Petitioner in both CR-04-22524 and CR-05-11789. (Respondents' Exh. B at 11) The court inquired whether Petitioner waived his right to a presentence report.

> The Court: [Petitioner], you have the right to have a presentence report prepared in this matter. I know very little about it other than the factual basis and what minimal amount that counsel has told me. If you want me to know more about it, then you could have a presentence report be prepared.
>
> [Petitioner]: No, sir, I don't ever want to be free again. I want to be incarcerated until I die.

(Respondents' Exh. at 8-11)

The court then sentenced Petitioner in both cases. In CR 2004-022524, the court sentenced Petitioner to three concurrent 5-year terms, two concurrent 2.5-year terms, six consecutive 17-year terms, and two consecutive 20-year terms. In CR 2005-011789, the court sentenced Petitioner to a term of natural life with no possibility of release to be served concurrently with the sentences imposed in CR 2004-022524. (Respondents' Exh. B at 16-18)

## B. Post-Conviction Proceedings

On September 9, 2005, Petitioner filed a consolidated notice of post-conviction relief pursuant to Ariz.R.Crim.P. 32.[3] (Respondents' Exh. D) In CR 2005-011789, appointed counsel filed a petition for post-conviction relief asserting the following claims: (1) the plea agreement's waiver of Petitioner's right to appeal in CR 2004-022524 was invalid; (2) the plea agreement was involuntary because Petitioner was under the influence of medication at the July

---

[3] The court dismissed the petition for post-conviction relief in CR 2004-022524 because Petitioner was able to pursue a direct appeal in that case. (Respondents' Exh. E) Petitioner's pending Petition for Writ of Habeas Corpus pertains to CR 2005-011789.

1  15, 2005 change-of-plea hearing and the court did not inquire whether Petitioner was under the

2  influence of medication before accepting his plea; and (3) trial counsel was ineffective because

3  he allowed Petitioner to: (a) waive his right to appeal in a separate case; and (b) enter into a plea

4  agreement while medicated.  (Respondents' Exh. F)

5          In response, the State conceded that the plea provision waiving Petitioner's right to

6  a direct appeal in Cause Number 2004-022524 was invalid, but was severable from the rest of

7  the plea agreement. (Respondents' Exh. A at 5-6)  The State further argued that Petitioner had

8  failed to provide expert medical opinion or relevant medical records to support his claim that

9  his plea was involuntary due to medication or his poor mental health.  (Respondents' Exh. A

10  at 6-7) The State also argued that trial counsel was not ineffective, noting that Petitioner had

11  avoided a death sentence and his life sentence was ordered to be served concurrently to his

12  sentence in a separate case. (Respondents' Exh. A at 8)

13          On May 30, 2006, the trial court dismissed the petition for post-conviction relief

14  finding that Petitioner had failed to state a colorable claim for relief. (Respondents' Exh. E) The

15  court noted that:

16          The States concedes that the provision in the plea agreement regarding
   [Petitioner] foregoing his right to appeal in CR 2004-022524-001 DT is

17          unenforceable.  Thus the provision is a nullity causing no prejudice
   to the [Petitioner].  As to the voluntariness of the plea, it should be

18          noted that [Petitioner] was represented by two experienced attorneys
   who never suggested any lack of competence. [Petitioner] has also

19          argued both that he was under the influence of medication [in CR
   2005-011789] and that he did not receive his medication, in CR 2004-

20          022524-001 DT.  No competent medical evidence has been presented that
   he was not fully competent during his trial, his plea, and his sentencing.

21          He clearly was not prejudiced by counsel's representation which allowed
   him to avoid the death penalty.

22
   (Respondents' Exh. E)

23
           Petitioner filed a petition for review in the Arizona Court of Appeals which was

24
   denied on May 24, 2007.  (Respondents' Exh. H)  Petitioner sought  review in the Arizona

25
   Supreme Court which was denied on October 31, 2007.  (Respondents' Exh. I)

26
   / / /

27
   / / /

28

## C. Federal Petition for Writ of Habeas Corpus

Thereafter, Petitioner filed the pending Petition for Writ of Habeas Corpus raising the following claims: (1) his plea was "unconstitutional" involuntary because (a) he was sleep deprived and under the influence of medication for psychiatric illness at the change-of-plea hearing; and (b) the trial court did not inquire into Petitioner's consumption of drugs before accepting his guilty plea; and (2) defense counsel was ineffective for failing to (a) inform the court that Petitioner was under the influence of medication and (b) adequately explain the terms of the plea agreement, which included a waiver of Petitioner's right to appeal in CR 204-022524. (docket # 1)

Respondents concede that the Petition is timely under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), thus, the Court will not address this issue further. 28 U.S.C. § 2254(d)(1); (docket # 10 at 7-8).

## II. Exhaustion and Procedural Default

Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for a writ of habeas corpus, the prisoner must have exhausted available state-court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust state remedies, the prisoner must have afforded the state courts the opportunity to rule upon the merits of his federal constitutional claims by "fairly presenting" them to the state courts in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). Respondents concede that Petitioner properly exhausted his grounds for relief by fairly presenting those claims on post-conviction review. (docket # 10 at 12) Accordingly, the Court will consider the merits of Petitioner's claims after setting forth the standard of review.

///

///

- 6 -

**III. Analysis**

### A. Standard of Review

This Court's analysis of the merits of Petitioner's claims is constrained by the applicable standard of review. A state prisoner "whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 638 (2003). Specifically, the AEDPA's "high burden" requires a federal habeas petitioner to prove that the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Uttecht v. Brown*, 551 U.S. 1, 2007 (2007); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (stating that "federal habeas relief may be granted" only if the state court's decision "was contrary to or involved an unreasonable application of this Court's applicable holdings.").

Under the "contrary to" clause of § 2254(d), a federal habeas court may not issue a writ, unless the state court: (1) applied a rule of law "that contradicts the governing law set forth in [Supreme Court] cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). In other words, a petitioner may be entitled to habeas corpus relief if he establishes that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. *Williams*, 529 U.S. at 405; *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002).

A state court decision is reviewed under the "unreasonable application of" standard where the state court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Williams*, 529 U.S. at 405; *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Under this standard, "[i]t is not enough that a federal habeas court, in its independent review of the legal question," is left with the "firm conviction" that the state court ruling was

"erroneous." *Id.*; *Andrade*, 538 U.S. at 75. Rather, the state court decision "must be objectively unreasonable." *Middleton v. McNeil*, 541U.S. 433 (2004); *Andrade*, 538 U.S. at 76; *Rompilla*, 545 U.S. at 380. An *unreasonable* application is different from an incorrect application of law. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The Court will consider Petitioner's claims in view of this standard.

### B. Ground One - Guilty Plea Involuntary

In ground one, Petitioner argues that his guilty plea was involuntary because he was sleep deprived, under the influence of medication, and in poor mental health at July 15, 2005 change-of-plea hearing and, therefore, was incompetent to enter a plea. (docket # 1 at 6) Petitioner further argues that the trial court did not inquire into Petitioner's consumption of drugs before accepting his guilty plea. (*Id.*)

Petitioner presented this claim on post-conviction review. The state court rejected this claim finding that Petitioner was represented by two experienced attorneys who never suggested any lack of competence. (Respondents' Exh. E) The court further found that the Petitioner had not offered any "competent medical evidence" in support of his claim. Petitioner has not shown that this decision was contrary to, or an unreasonable application of federal law, or that the state court's decision rests on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d).

The United States Supreme Court law governing the voluntariness of a guilty plea is *Brady v. United States*, 397 U.S. 742 (1970) and its progeny. The Supreme Court has held that "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (quoting *Brady*, 397 U.S. at 748). A guilty plea is valid if it is entered voluntarily and intelligently considering the totality of the circumstances. *Brady*, 397 U.S. at 749; *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). The central question is "'whether the plea represents a voluntary and intelligent choice among the alternative courses

of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

Although the Supreme Court has noted that the defendant's representations at the time of his guilty plea are not "invariably unsurmountable" when challenging the voluntariness of his plea, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings," and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The record must reflect that a criminal defendant pleading guilty understands, and voluntarily waives, his rights against self-incrimination, to trial by jury, and to confront his accusers.  *Boykin*, 395 U.S. at 243.  If the record reflects that a guilty plea is knowing and voluntary, "no particular ritual or showing on the record is required."  *United States v. McWilliams*, 730 F.2d 1218, 1223 (9th Cir. 1984).

As previously stated, Petitioner argues that his plea was involuntary because he was incompetent to enter a plea.  The conviction of a legally incompetent defendant violates the Due Process Clause of the Fourteenth Amendment. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996).  The test for competency is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993). *See also Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997) (stating that "[w]hen analyzing competence to plead guilty, we look to whether a defendant has the ability to make a reasoned choice among the alternatives presented to him.") (internal quotes omitted).  Petitioner bears the burden of establishing mental incompetence.  *Boag v. Raines*, 769 F.2d 1341, 1343(9th Cir. 1985).

Whether a defendant is capable of understanding the proceedings and assisting counsel "depends on evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence to stand trial." *Drope v. Missouri*, 420 U.S. 162,

180 (1975).  The record reflects that there was a colloquy between the court and Petitioner at the time he entered his plea.  Petitioner answered affirmatively when asked whether he had read and discussed the plea agreement with counsel, and understood its terms.  (Respondents' Exh. B at 8-11)  Petitioner acknowledged that, by pleading guilty, he understood he was foregoing his rights to a jury trial, the right to confront witnesses against him, the right to present witnesses and evidence in his defense, and the right against self-incrimination.  (Respondents' Exh. B at 8-11)    The court also advised Petitioner regarding the possible sentence. (Respondents' Exh. B at 7) Petitioner stated that he understood his sentencing exposure. (Respondents' Exh. B at 5-6)   Petitioner also indicated that nobody had forced or threatened him to enter his plea.  (Respondents' Exh. B at 10)  Petitioner indicated that he did not have any questions for the court or counsel.  (Respondents' Exh. B at 11) The court then found that petitioner knowingly, intelligently, and voluntarily entered a plea of guilty, and  accepted the plea.  (Respondents' Exh. B at 11)

Although the court did not inquire into Petitioner's consumption of medication before the plea, it was able to observe Petitioner's behavior during the change-of-plea hearing. The trial court properly relied on its observations in determining that Petitioner was competent to enter his guilty plea. *See Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997) (holding that in determining whether a defendant is capable of understanding the proceedings and assisting counsel, the trial court may rely upon the defendant's demeanor in court and any irrational behavior or lack thereof.).  Petitioner has not offered any evidence to support his claim that he was incompetent to enter his plea.  Despite being offered the opportunity, Petitioner did not ask any questions during the change-of-plea hearing.  There is no evidence that Petitioner was acting irrationally or exhibiting any unusual behavior at the hearing.  The record does support Petitioner's claim that he was taking medication for psychiatric illness around the time of the change-of-plea hearing, (Respondents' Exh. F, exhibit 1[4]), but this fact, standing alone, is not

---

[4] Petitioner was prescribed Seroquel on July 9, 2005 for 30 days and was prescribed Vistaril on March 12, 2005 for 8 weeks.  (Respondents' Exh. F, exhibit 1)  Seroquel is

dispositive of Petitioner's contention that he was incompetent to enter a guilty plea. "The mere fact that a defendant took mood-altering medication is not sufficient to vitiate his plea. There must be some evidence that the medication affected his rationality." *Sturgis v. Goldsmith*, 796 F.2d 1103, 1109-10 (9th Cir. 1986) (stating that failure to present evidence of medication petitioner was taking or "how [the medication] might have affected his competence at trial" also failed to raise a bona fide doubt as to petitioner's competency to stand trial). Even assuming Petitioner was under the influence of medication on July 15, 2005, there is no evidence that such medication rendered him unable to understand the proceedings or assist counsel.

In support of his claim that he was incompetent to enter a plea, Petitioner states that he was "stripped naked" and left in a "stripped cell with 10-minute health checks, and that his "mental health status was so fragile that the jail psychiatrist wrote an order to be called at home before any change in Petitioner's status could be made." (docket # 1 at 6) Petitioner does not identify the date on which these events occurred. However, the record reflects that these events happened on or about July 1, 2005, several weeks before Petitioner entered his guilty plea. (Respondents' Exh. F, exhibit 1)

There is also no evidence that any person attending the change-of-plea hearing perceived that Petitioner was suffering ill effects from the lack of sleep, from his medication, or was otherwise unable to understand the proceedings. (Respondents' Exh. B) Neither the government nor Petitioner's counsel raised the issue of Petitioner's competency during the change-of-plea proceedings. *See Medina v. California*, 505 U.S. 437, 450 (1992) ("defense counsel will often have the best-informed view of defendant's ability to participate in his defense."); *United States v. Lewis*, 991 F.2d 524, 528 (9th Cir. 1993) (a defense counsel's silence on the petitioner's competency is some evidence that the petitioner showed no signs of incompetence at that time.); *Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 1991) (stating that

"indicated for the treatment of acute manic episodes associated with bipolar disorder and the treatment of schizophrenia." (Respondents' Exh. F, exh. 3) Vistaril is indicated for symptomatic relief of anxiety and tension associated with psychoneurosis. (Respondents' Exh. F, exh. 2)

"we deem significant the fact that the trial judge, government counsel, and Hernandez's own attorney did not perceive a reasonable cause to believe Hernanadez was incompetent.").

In view of the foregoing, Petitioner has failed to demonstrate that he was incompetent to enter his guilty plea or that the decision of the Arizona Superior Court in rejecting this claim on post-conviction review was contrary to, or involved an unreasonable application of federal law. Accordingly, Petitioner is not entitled to habeas corpus relief on ground one.

### C. Ground Two - Ineffective Assistance of Counsel

In ground two, Petitioner argues that trial counsel was ineffective for failing to: (1) inform the trial court of Petitioner's diminished mental health and medicated state; and (2) explain that the term of the plea agreement which waived Petitioner's right to appeal in a different case, CR 2004-22524, was invalid. (docket # 1 at 7) Petitioner presented these claims on post-conviction review. The state court rejected these claims. (Respondents' Exh. G) Petitioner has not shown that the state court's decision was contrary to or an unreasonable application of federal law.

### 1. Controlling Supreme Court Precedent

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner. *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999). To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

To establish a Sixth Amendment violation, petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance. *Strickland*, 466 U.S. at 691-92; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) (stating that "a violation of the Sixth Amendment right to effective representation is not 'complete' until the defendant is prejudiced.") To show prejudice, petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069; *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). In proving prejudice, a petitioner who has pled guilty or no contest to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The court may proceed directly to the prejudice prong. *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 697). The court, however, may not assume prejudice solely from counsel's allegedly deficient performance. *Jackson*, 211 F.3d at 1155.

### a. Failure to Advise Court of Petitioner's Medicated State

In Ground 2(a), Petitioner argues that counsel was ineffective for failing to inform that court that he was medicated at the change-of-plea hearing. (docket # 1 at 7) Petitioner presented this claim on post-conviction review. (Respondents' Exh. F) The court rejected this claim. (Respondents' Exh. E) Petitioner has not shown that the state court's decision was contrary to, or involved an unreasonable application of, federal law.

1    While the record contains evidence that Petitioner was likely taking medication for
2    mental health issues at the time of the change-of-plea[5], there is no evidence indicating that
3    counsel should have been aware that Petitioner's medicated state rendered him unable to
4    voluntarily enter his guilty plea.  The fact that Petitioner was taking medication for his mental
5    health does not, by itself, support a conclusion that counsel should have known Petitioner was
6    incompetent to enter a guilty plea. *See Sturgis v. Goldsmith*, 796 F.2d 1103, 1109-10 (9th Cir.
7    1986) (stating that "[t]he mere fact that a defendant took mood-altering medication is not
8    sufficient to vitiate his plea.  There must be some evidence that the medication affected his
9    rationality.")  Even assuming that counsel was deficient for failing to advise the court of
10   Petitioner's medicated state, Petitioner has not established that he was prejudiced thereby.  In
11   the context of a guilty plea, a petitioner establishes prejudice by showing that, but for counsel's
12   deficient performance, he would have rejected the plea and proceeded to trial.  *See Hill v.*
13   *Lockhart*, 474 U.S. 52, 59 (1985) (stating that to prove prejudice, a petitioner who has pled
14   guilty or no contest to an offense must demonstrate that there is a reasonable probability that,
15   but for counsel's errors, he would not have entered such a plea and would have insisted on
16   going to trial.). Petitioner does not argue that he would have rejected the plea had the court been
17   advised of his medicated state.

### b.  Failure to Advise Petitioner that Waiver was Invalid

18
19       In Ground 2(b), Petitioner argues that counsel was ineffective for failing to inform
20   him that the waiver of his right to appeal in CR 2004-22524 was invalid.  (docket # 1 at 7)  On
21   post-conviction review, Petitioner argued that the plea agreement's waiver of Petitioner's right
22   to appeal in CR 2004-022524 was invalid.  In its response, the State conceded that the plea
23   agreement term waiving Petitioner's right to a direct appeal in Cause Number CR 2004-022524
24

25       [5] Petitioner was prescribed Seroquel on July 9, 2005 for 30 days and was prescribed
26   Vistaril on March 12, 2005 for 8 weeks. (Respondents' Exh. F, exhibit 1)  Seroquel is
     "indicated for the treatment of acute manic episodes associated with bipolar disorder and the
27   treatment of schizophrenia." (Respondents' Exh. F, exh. 3) Vistaril is indicated for symptomatic
28   relief of anxiety and tension associated with psychoneurosis. (Respondents' Exh. F, exh. 2)

- 14 -

was invalid, but was severable from the rest of the plea agreement. (Respondents' Exh. A at 5-6) As a result, the trial court concluded that Petitioner could file a direct appeal in CR 2004-022524, and dismissed his challenge to the waiver provision. Petitioner was afforded relief on this claim on post-conviction review.

Even assuming counsel's performance was deficient for failing to inform Petitioner that the waiver provision was invalid, Petitioner has not established that he was prejudiced thereby. Petitioner does not argue that had he known the waiver provision was invalid, there is a reasonable possibility that he would not have entered the plea and would have proceeded to trial. Indeed, such an argument does not make sense. If Petitioner was willing to enter the guilty plea under the belief that it included a valid waiver of his right to appeal in another case, it is illogical that he would have rejected that same plea if it did not include such a waiver.

In summary, Petitioner fails to establish that the state court's rejection of his claim of ineffective assistance was contrary, or rested on an unreasonable application of, federal law. Accordingly, he is not entitled to habeas corpus relief on ground two.

**IV. Conclusion**

In view of the foregoing, the Petition for Writ of Habeas Corpus should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (docket # 1) be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's

Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 11th day of June, 2009.

Lawrence O. Anderson
United States Magistrate Judge